DocuSign Envelope ID: 2F640E70-F76B-49E0-A05E-7C895A62D3F9

## MASTER SERVICE AGREEMENT

This Master Service Agreement is between J.B. Hunt Transport, Inc., with offices located at 615 J.B. Hunt Corporate Drive, Lowell, AR 72745 ("Buyer") and Avtex Solutions, LLC ("Contractor"), having a principal place of business in Bloomington, MN individually referred to as a "party" or collectively as the "parties". Buyer and Contractor agree as follows.

1. SERVICES:

    1.1 Contractor will perform the requested Services, including at any specific locations, as specified by Buyer in the applicable Statement of Work. Contractor will provide qualified personnel ("Worker" or "Workers") to perform the Services. Buyer may at any time, reasonably request the Contractor to remove a Worker and furnish a suitable replacement as soon as possible, for commercially acceptable reasons. Buyer is not liable to Contractor for payment for rejected Workers after rejection of such Workers. Workers may be employees of Contractor or Contractor's Affiliates, or subcontractors.

2. TERM AND TERMINATION:

    2.1 This Agreement is effective from May 23, 2019 – May 23, 2020 (the "Initial Term") and will automatically renew for successive one-year periods at the end of each term, unless a party provides notice to the other party of its intent not to renew at least thirty (30) days prior to the end of the then current term.

    2.2 In the event that Contractor breaches a provision of this Agreement, and fails, within thirty (30) days of written notice from Buyer specifying the nature of the breach, to cure such breach, then Buyer may immediately terminate this Agreement by subsequent written notice to Contractor.

    2.3 Buyer may terminate this Agreement, without cause, with thirty (30) days written notice to Contractor. In the event of such termination of this Agreement by Buyer, Contractor agrees to stop all work under this Agreement, upon receipt of such notification. Buyer agrees to pay for all authorized work performed in accordance with this Agreement and satisfactory to Buyer, up to the date of receipt of written notice of termination, but not to exceed in any event the total compensation payable hereunder.

    2.4 Upon termination of this Agreement for any reason whatsoever, Contractor will promptly deliver to Buyer all work performed by Contractor under this Agreement including all documentation and all copies thereof.

3. PAYMENTS:

    3.1 Contractor will submit invoices to Buyer monthly, and such invoices shall be accompanied by supporting documentation. Buyer will pay Contractor the fees set forth in the applicable Statement of Work, within thirty (30) days after receipt of invoice. If Buyer questions any invoice, then Buyer may withhold payment on any disputed amount(s) until Contractor has verified both the amount and validity of the invoice. In providing the Services, Contractor will observe the holidays specified by Buyer. Buyer will not pay any holiday pay. Buyer shall not be liable for payment to Contractor for Services which are not invoiced to Buyer within ninety (90) days after Contractor performs Services.

    3.2 Buyer will reimburse Contractor for travel expenses such as meals, lodging, and



JBHunt00001

DocuSign Envelope ID: 2F640E70-F76B-49E0-A05E-7C895A62D3F9

transportation reasonably incurred by Contractor in providing the Services in accordance with Buyer's Travel Policy as set forth in Addendum B. Buyer's Travel Policy may be amended from time to time, upon reasonable notice to Contractor. All approved expenses must be supported by back up documentation. Time spent in traveling will not be considered in computing time. It is understood that Contractor will not be reimbursed by Buyer for any expense other than an expense explicitly approved by Buyer in accordance with the process set forth herein.

4. QUALITY / WARRANTIES:

   4.1 Contractor represents and warrants that the Services will be in conformance with the specifications in the applicable Statement of Work and shall be satisfactory to Buyer. Contractor also represents and warrants it will not knowingly infringe any copyright, patent, trademark, trade name, or any proprietary right of any third party and that Contractor has legal title to transfer all materials provided to Buyer. Upon notice from Buyer, Contractor will correct any unsatisfactory part of the Services, at no extra charge to Buyer. If Contractor is unsuccessful at correcting the unsatisfactory part of the Services within a reasonable time, Contractor will not charge for such Services and will refund any pro-rata fees previously paid for such part of the Services. Contractor represents and warrants that the Services and Deliverables will operate as described in the Statement of Work and will be free of material defects (hereinafter "Technical Issues") for a period of sixty (60) days following the date such Services and Deliverables are accepted by Buyer. To be covered by this limited warranty, such Technical Issues must be (i) reported by Buyer within sixty (60) days following the acceptance date and (ii) reproducible by Contractor. Buyer will pay for Technical Issues as part of the post go-live support phase detailed in the SOW; any hours required to remedy Technical Issues that exceed those budgeted in the post go live support phase will be the responsibility of the Contractor. This limited warranty shall not apply to any defects or problems caused in whole or in part by any defect in any portion of any hardware, firmware, peripheral or communication device used in connection with the Services and/or Deliverables.

5. INDEPENDENT CONTRACTOR:

   5.1 The relationship between the parties shall be solely an independent contractor relationship. Neither Contractor nor any Worker is an agent or employee or partner of Buyer or its Affiliates. Neither Buyer nor any of its employees, agents, or partners is an agent or employee of Contractor or its Affiliates. Nothing in this Agreement gives Buyer or its Affiliates the right to direct or control the means, method, or manner by which Contractor or Workers perform the Services. Rather, Contractor and Workers will follow the desires of Buyer in obtaining the results of the Services, in accordance with the Addendum A. Neither party will have authority to bind the other except to the extent authorized in this Agreement or as otherwise provided by mutual written agreement of an authorized representative of each party. This Agreement is not intended by the parties to constitute or create a joint venture, pooling arrangement, partnership, or a formal business organization of any kind, and the rights and obligations of the parties are only those expressly set forth herein.

6. CONFIDENTIALITY:

   6.1 Addressed in Mutual Non-Disclosure Agreement executed by parties May 28, 2019.

JBHunt00002

DocuSign Envelope ID: 2F640E70-F76B-49E0-A05E-7C895A62D3F9

7. INTELLECTUAL PROPERTY:

    7.1 Buyer and Contractor respectively maintain a pool of Intellectual Property. Each party will retain sole ownership of Intellectual Property it owned prior to the creation of this Agreement. Buyer shall own any new Intellectual Property created by Contractor specifically for Buyer, and Contractor shall grant to Buyer an exclusive, perpetual license to use the new Intellectual Property.

    7.2 Contractor warrants that it has the right to grant rights to use Intellectual Property to Buyer according to this section 7.

8. EXPORT CONTROL:

    8.1 Technical data, software, materials or products provided or created under this Agreement may be subject to export control laws and regulations of the United States or other relevant jurisdictions. Contractor agrees to obtain the necessary license or approval to export, re-export, resell, ship or divert or cause to be exported, re-exported, resold, shipped or diverted, directly or indirectly, any technical data, software, materials or products obtained or created as a result of this Agreement that are the subject of the export control laws and regulations.

    8.2 Contractor will comply with all laws and regulations applicable to the Services, including but not limited to applicable tax laws, wage and hour laws and shall ensure that all Workers are legally able to work in the United States of America. Buyer may audit and inspect Contractor's files, records, or other documents related to the Workers providing services to Buyer under this Agreement, upon reasonable advance notice to Contractor. Contractor shall indemnify, defend, and hold Buyer harmless from any claims, liabilities, or expenses which Buyer may be subject to arising from Contractor's failure to comply with the foregoing.

9. ANTI-CORRUPTION

    9.1 In the performance of its obligations under this agreement, Contractor agrees to comply with all anti-corruption related laws, regulations, orders and policies having the force of law of the Territory, and where applicable the U.S. Foreign Corrupt Practices Act of 1977, as amended. Contractor further represents that no government official is a principal, owner, officer, employee or agent of any entity in which Contractor has an interest, and no government official has any material financial interest in the business of the Contractor.

10. SAFETY AND SECURITY:

    10.1 Contractor will abide by all Buyer safety-related rules and procedures while on Buyer or Buyer's customers' premises. Contractor will maintain records of all recordable injuries or illnesses (as defined by any government entity) experienced by Workers while performing the Services and will provide copies of such records to Buyer, upon Buyer's request.

11. HOLD HARMLESS AND INDEMNIFICATION:

    11.1 Contractor agrees to defend, indemnify and hold harmless Buyer, its customers, Affiliates, and their officers, directors, agents, employees and assigns (each an "Indemnified Party"), from and against all claims (including copyright, trademark, or patent infringement

claims), liabilities, demands, damages, losses, costs, and expenses, (including reasonable attorney's fees and investigative expenses), arising out of or resulting from provision of the Services, or occasioned by reason of Contractor or Worker(s) traveling to or from a site to perform Services or being on a Buyer or its Affiliates' or customers' site.

11.2 Contractor will not be obligated to so indemnify if the claimed infringement or misappropriation is caused by Buyer's (1) misuse or modification of such materials, (2) failure to use corrections or enhancements made available by the party from which indemnity is claimed, (3) use of the materials in combination with any product or information not provided or developed by Contractor, provided that Contractor has not provided written consent to allow the materials to be used with a non-contractor provided product, , () distribution, marketing or use of the materials for the benefit of any third party or(5) following instructions, specifications or direction provided by Buyer. Upon notice of an alleged infringement or if in Contractor's opinion such a claim is likely, or alternatively, if Buyer's rights hereunder are restricted by Contractor or a valid court order, then Contractor shall at its option and sole expense: (a) procure the right for Buyer to continue using the alleged infringing material; or (b) revise the material with non-infringing material which is equivalent in features, functionality and quality; or (c) modify the material to make it non-infringing while retaining all original features, functionality and quality; or (d) refund Buyer fees paid for respective material based on a depreciated value over three (3) years.

11.3 Each party expressly excludes liability for consequential loss or damage, loss of profit, business, revenue, and goodwill or anticipated savings.

12. **INSURANCE**:

12.1 Contractor understands and agrees that Buyer will not provide insurance for Contractor or on Contractor's behalf under this Agreement. Therefore, Contractor will procure and maintain property and liability insurance of the kinds and amounts as specified in Addendum A.

12.2 Before beginning the Services, Contractor will provide to Buyer a certificate of insurance as evidence of the insurance policies which are required from Contractor pursuant to Addendum A, which policies shall cover the period during which the Services are performed. Such policies shall: a) include a contractual liability endorsement to cover Contractor's Hold Harmless and Indemnification obligation in Section 11 herein, b) provide that the insurer will provide at least twenty (20) days prior written notice to Buyer before any cancellation, alteration or reduction of the certified insurance policy, and c) include an endorsement or declaration page naming Buyer as an additional insured under the policies (except any applicable Worker's Compensation policies).

13. **NOTICES**:

13.1 All required notices shall be deemed effective upon receipt and shall be in writing and mailed, postage prepaid, to the following addresses:

DocuSign Envelope ID: 2F640E70-F76B-49E0-A05E-7C895A62D3F9

| To Buyer: | To Contractor: |
| --- | --- |
| J.B. Hunt Transport, Inc. | Avtex Solution, LLC |
|  | Attn: Chris Kumsher |
| 615 J.B. Hunt Corporate Dr. | .3500 American Boulevard West, Suite 300 |
| Lowell, AR 72745 | Bloomington, MN 55431 |

14. NON-EXCLUSIVITY:

   14.1 Buyer may obtain similar services from other parties at the sole discretion of Buyer without any liability to Contractor.

   14.2 Contractor may offer similar services to other parties at the sole discretion of Contractor without any liability to Buyer

15. GOVERNING LAW:

   15.1 This Agreement shall be governed by and interpreted under of the laws of the State of Arkansas, and without giving effect to any choice or conflict of law rule that would cause application of the laws of any jurisdiction other than that set forth in this Section. All disputes, including those related to interpretation, enforceability, validity, and construction, shall be determined under the laws of the State of Arkansas without regard to any conflict of law provisions. The parties submit to the exclusive jurisdiction of the courts of Arkansas in the judicial district (state or federal) nearest to Buyer's headquarters for all disputes and actions arising, directly or indirectly, out of this Agreement, the performance of this Agreement, or the breach of this Agreement. Any action arising, directly or indirectly, out of this Agreement must be commenced within two (2) years after the cause of action has accrued.

16. ASSIGNMENT:

   16.1 No assignment of the Agreement or of any right or obligation under the Agreement shall be made by Contractor without the prior written consent of Buyer. In the event of a proper assignment, the Agreement shall be binding and inure to the benefit of Contractor's successors and assigns.

17. THIRD PARTY RIGHTS:

   17.1 This Agreement does not establish third-party beneficiary rights in any party.

18. RIGHT OF INSPECTION:

   18.1 Buyer and its Affiliates or customers may inspect any documents, vehicles, or containers entering, stored on, or leaving the property of Buyer and its Affiliates or customers.

19. HEADINGS:

   19.1 Titles and headings to articles, sections or paragraphs in this Agreement are inserted for convenience of reference only and are not intended to affect the interpretation or construction of the Agreement.

20. <u>INVALIDITY</u>:

   20.1 If one or more of the provisions of this Agreement shall be found, by a court with jurisdiction, to be illegal, invalid or unenforceable, it shall not affect the legality, validity, enforceability of any of the remaining provisions of this Agreement. The parties agree to attempt to substitute for any illegal, invalid or unenforceable provision, a legal, valid or enforceable provision which achieves to the greatest extent possible, the economic objectives of the illegal, invalid or unenforceable provision.

21. <u>COUNTERPARTS</u>:

   21.1 This Agreement may be executed in two or more counterparts, each of which shall be deemed to be an original but all of which shall be deemed to constitute only one agreement.

   21.2 Either party may transmit its signature by facsimile and any faxed counterpart of this Agreement shall have the same force and effect as an original.

22. <u>AUDITS</u>:

   22.1 Upon request, Contractor will permit Buyer to audit Contractor's records to ensure compliance with the requirements of this Agreement. Such audits will occur at reasonable times and upon reasonable notice and will be made at the expense of Buyer. Upon termination of this Agreement for any reason, Buyer has the right to request a final audit conducted on the same terms provided above.

23. <u>PRE-SCREENING / SECURITY CHECKS / SUBSTANCE ABUSE</u>:

   23.1 Buyer shall have the right to meet each Worker so named by Contractor, for the performance of an applicable Statement of Work, in order to confirm the technical qualifications of the Worker prior to assignment to Buyer. Such meetings are for the purpose of the Buyer confirming the Worker's ability to perform the technical aspects of the assignment for which the Worker has been requested. Buyer shall advise Contractor of acceptance or non-acceptance on the date of the applicable meeting. Buyer's decision in each case shall be final and based on commercially acceptable reasoning. Buyer's right to confirm the Worker's qualifications, to accept or not accept or request the removal of the Worker shall not imply co-employment with Buyer and Contractor shall remain the sole employer. Payment for such Worker shall cease immediately upon notification to Contractor of the unsatisfactory performance. Upon receipt of notice that a Worker's performance is unsatisfactory to Buyer, Contractor shall immediately remove such Worker from Buyer's worksite and replace such Worker with a new Worker, if so requested by Buyer. The provisions of this section shall apply to any such new Worker.

   23.2 Buyer may immediately request a Worker is removed and replaced if any Worker violates Buyer's substance abuse policy while on Buyer premises, in a Buyer vehicle, or performing the Services. Buyer's substance abuse policy prohibits the possession or use of illegal drugs, drug paraphernalia, or the misuse of prescription or nonprescription drugs. Buyer will notify Contractor of any suspected substance abuse by Workers.

   23.3 Upon the request of Buyer, Contractor will require each Worker to participate in substance

DocuSign Envelope ID: 2F640E70-F76B-49E0-A05E-7C895A62D3F9

      screening.

23.4 Contractor agrees to perform background security checks and drug testing on Workers in accordance with the requirements more fully described in Addendum C. The background checks are to be performed by a reputable, qualified, and nationally-recognized background check service provider. Buyer reserves the right to amend the requirements described in Attachment C upon notice to Contractor.

24. TRAINING:

24.1 Contractor will provide such training as may be required to comply with all applicable State and Federal laws and regulations to all Workers who are to perform Services under this Agreement.

25. DEFINITIONS:

25.1 For purposes of this Agreement, the following terms have the definitions in this section.

25.2 "Affiliate" in the case of Buyer means any entity (now existing or later created) of which Buyer owns, directly or indirectly, a majority equity interest.

25.3 "Affiliate" in the case of Contractor means any entity of which Contractor owns, directly or indirectly, a majority equity interest.

25.4 "Confidential Information" means Information that either party regards as confidential or proprietary and may reasonably expect to be treated as confidential by the other party, including without limitation, trade secrets, know-how and information relating to sales and marketing strategies, business policies and practices, software and hardware products, customers and competitors, personally identifiable information (PII), and the terms, conditions, and existence of this Agreement.

25.5 "Information" means all information transferred under this Agreement by one party to the other, including but not limited to, Confidential Information, and non-confidential information, market information, business information, manufacturing process data and information, equipment designs, and specifications.

25.6 "Intellectual Property" or "IP" includes ideas; developments; discoveries; improvements; drawings; inventions, whether patentable or not; know-how; data; results; reports; designs; trade secrets; know-how; patents, trademarks, and copyrights (and any pending applications for protection therefor globally); and other modifications.

26. WAIVER:

26.1 Buyer's failure to exercise a right or remedy or Contractor's acceptance of a partial or delinquent payment shall not operate as a waiver of any of Buyer's original rights or Contractor's obligations under this Agreement and shall not constitute a waiver of Buyer's right to declare an immediate or subsequent default.

27. SURVIVAL:

27.1 Sections relating to Confidentiality, Intellectual Property, Export Control, Hold Harmless and Indemnification, Non-exclusivity, and Audits survive termination of this Agreement.

JBHunt00007

DocuSign Envelope ID: 2F640E70-F76B-49E0-A05E-7C895A62D3F9

28. ENTIRE AGREEMENT:

    28.1 This Agreement constitutes the entire agreement between the parties with respect to the subject matter hereof. All contemporaneous and prior negotiations, representations, warranties, promises, and understandings regarding the subject matter hereof have been merged into this Agreement. In the event of any inconsistency or conflict between or among this Agreement and any purchase order, invoice, or other document, the terms of this Agreement take precedence over any such other document. This Agreement may be amended only in writing, including any Statement of Services attached hereto as Addendum A, that is signed by authorized representatives of both parties and specifically sets forth the parties' intent to amend this Agreement. No oral revisions or course of performance will operate to modify this Agreement. Each party has read and agreed to the specific language of this Agreement, therefore, no conflict, ambiguity, or doubtful interpretation will be construed against the drafter. No additional or different terms in any other document will create any additional rights or obligations.

This Agreement has been executed by duly authorized representatives of the parties on the dates below but is effective as of the date set forth in section 2.

**J.B. HUNT TRANSPORT, INC.**       **AVTEX**

By: *Brad McBride (Jun 17, 2019)*       By: *Dale Mansour* (DocuSigned by: BEC7031FAF114CA...)

Name: **Brad McBride**       Name: Dale Mansour

(Type or Print)       (Type or Print)

Title: **Sr. I.S. Manager**       Title: CBO

Date: Jun 17, 2019       Date: 6/5/2019

8

DocuSign Envelope ID: 2F640E70-F76B-49E0-A05E-7C895A62D3F9

## ADDENDUM A

### INSURANCE REQUIREMENTS

During the term of the Agreement, Contractor shall maintain, at its own expense, the following insurance:

(a) Statutory workers' compensation insurance and employer's liability insurance as required by applicable law;

(b) Commercial general liability insurance with aggregate limits of no less than $2,000,000, and $1,000,000 per occurrence;

(c) Automobile liability insurance with an aggregate limit of no less than $1,000,000;

(d) Professional liability errors & omissions insurance with an aggregate limit of no less than $5,000,000; and

(e) a Crime policy with an aggregate limit of no less than $1,000,000.

DocuSign Envelope ID: 2F640E70-F76B-49E0-A05E-7C895A62D3F9

## ADDENDUM B

## BUYER'S TRAVEL POLICY

### J.B. Hunt Transport, Inc.
### Travel Expense Policy for Suppliers

Upon prior approval by J.B. Hunt Transport, Inc. (Buyer), Contractor shall be reimbursed for its employees' reasonable and properly documented expenses (original invoices/receipts only) incurred as a result of travel to Buyer's location for the purposes of performing work hereunder subject to the <u>same rules</u> as those which govern similar travel by Buyer's employees.

Travel arrangements should be made 21 days in advance where possible. Arrangements made less than 14 days prior to travel will require additional approval by Buyer.

(a) **Airfare.** Subject to availability, Contractor will obtain the lowest cost, non-refundable fares when traveling. Buyer agrees to reimburse Contractor for any scheduled non-refundable and/or non-changeable tickets that are scheduled and subsequently cancelled at request of Buyer.
(b) **Ground Travel.** Contractor's employees will use the most economical form of ground transportation available, which may include personal vehicles, rental cars, airport or hotel shuttle buses, and/or taxis.
(c) **Mileage Reimbursement.** Mileage for use of a personal vehicle for the purpose of business travel is reimbursable. The current mileage reimbursement rate is determined by GSA per diem rate at the time of travel. Expenses (mileage, taxi, train, bus, tolls, tips, etc.) incurred between Supplier's home or office and the airport are not reimbursable.
(d) **\*Lodging.** If available, Contractor's employees will stay at hotels with corporate discounts. If Buyer's corporate rate is more favorable than Contractor's rate, Contractor will use Buyer's rate. The maximum reimbursable lodging expense is the room rate plus taxes. Contractor will not request reimbursement of any other items on hotel bills.
(e) **Per Diem Expense.** In lieu of actual meal expenses, Supplier agrees to a GSA per diem rate at time of travel. To qualify for a per diem allowance an individual must have at least one overnight stay away from their residence.

DocuSign Envelope ID: 2F640E70-F76B-49E0-A05E-7C895A62D3F9

## ADDENDUM C

## BACKGROUND SECURITY CHECKS
## AND DRUG TESTING REQUIREMENTS

**Background Investigations**

Contractor, where applicable, is solely responsible for all aspects of the background check process, including providing proper forms, notices and disclosures to affected individuals in accordance with all federal, state and local laws. The results of the background checks will be maintained by Contractor for all individuals subject to these background check requirements. Contractor agrees that periodic audits of its records may be conducted by Buyer, upon reasonable advance notice, to demonstrate its compliance under this Agreement.

Contractor's background investigations will include, at a minimum and to the extent permitted by law, the following searches at time of placement using both the individual's current name and previous name(s), if the individual has changed names within the last five (5) years: (1) a search for (a) felonies recorded within at least seven years of the date of the background investigation (the "Felony Search Period"), and (b) a search for misdemeanors recorded within at least seven years of the date of the background investigation (the "Misdemeanor Search Period"); (2) a search for felonies and misdemeanors recorded during the Felony Search Period and the Misdemeanor Search Period within (a) the National Criminal File, which contains multiple criminal record repositories of criminal records covering all fifty states including a search of a Fugitive File, Government Watch list and Sex Offender Registry, (b) relevant counties based on history of resident addresses, and (c) Federal court-specific criminal cases; and (3) verification that the social security number provided by the individual is valid in records of the Social Security Administration. Subject to applicable law, Contractor will not assign a Worker to Buyer if the Worker is found to have been convicted of any of the following Disqualifying Criminal Convictions:

a) Capital (or first degree) murder
b) Murder (in any other degree)
c) Rape or any sexual assault
d) Voluntary manslaughter
e) Felony stalking; possession of child pornography or electronic solicitation of child   pornography
f) Molestation or abuse of a child
g) Molestation or abuse of an elderly person
h) Burglary or Theft
i) Robbery or any felony where a deadly weapon was used or exhibited
j) Felony arson

11

JBHunt00011

DocuSign Envelope ID: 2F640E70-F76B-49E0-A05E-7C895A62D3F9

k)  Felony related to the manufacture, delivery, or possession of marijuana, a controlled substance, or other dangerous drugs
l)  Conviction of any attempts or conspiracies to commit the crimes listed above

**Drug Testing**

Subject to applicable law, Contractor will assign only Workers to perform services for Buyer if said Worker (a) received negative results on Contractor's drug testing; and (b) does not appear to be under the influence of alcohol or drugs. Contractor's drug testing (1) shall comply with applicable laws, rules and regulations; (2) shall include to the extent permitted by law, to be conducted at time of placement, a test for the following substances using a 5 panel urine test: Amphetamines, Cocaine, Marijuana, Phencyclidine (PCP), and Opiates *or* a negative 5 panel urine drug test for the same substances referenced herein, conducted within the previous six (6) months, on file for the Worker; and (3) shall ensure the integrity, confidentiality and reliability of the testing process, safeguard the validity of the test results and ensure that the test results are attributed to the correct individual.

JBHunt00012