IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

J.B. HUNT TRANSPORT, INC.                                                                                                   PLAINTIFF

vs.                                                    Case No. 5:23-cv-05094-TLB

TTEC DIGITAL, LLC and TTEC HOLDINGS, INC.                                                  DEFENDANTS

## DEFENDANTS' STATEMENT OF UNDISPUTED FACTS

TTEC Digital, LLC, who is the successor in interest to former defendant Avtex Solutions, LLC, and TTEC Holdings, Inc. (collectively, "TTEC"), for their Local Rule 56.1 statement of undisputed facts in support of their motion for summary judgment, state:

1. Founded in 1982, TTEC has over 40 years of experience providing business process outsourcing, technology, consulting, and analytics services to deliver, among other things, technical computer support. *See* Declaration of Tommy Hu, Ex. 1 to TTEC's Motion, at ¶ 3.

2. At all times relevant to this action, TTEC was certified by Microsoft as a gold-certified managed partner who could install Microsoft products. *See id*. at ¶ 4.

3. In June 2019, Hunt contracted for TTEC to install certain Microsoft software related to the recruitment of driver applicants to become employees. Specifically, Hunt and TTEC entered into a Master Service Agreement ("MSA") and a Statement of Work" ("SOW").

4. The MSA and SOW are attached to TTEC's motion as Exhibits 2 and 3, respectfully.

5. The SOW sets forth that Hunt was replacing its workforce management systems, including "the portal[] to be used by Driver Candidates," with a new "Microsoft Dynamics 365 based driver recruiting system" (the "Portal") created by Microsoft. SOW, Ex. 3, §1.1-1.2. In other words, Hunt wanted a new online job application program for drivers.

6. Microsoft Dynamics 365 (D365) is a suite of applications that allows businesses to, among other things, monitor their supply chains, coordinate among teams, and connect directly with customers. *See* Hu Declaration, Ex. 1, at ¶ 5.

7. The Portal is an application that uses the D365 framework to receive and store job applications, which can include an applicant's personal information. *See id*. at ¶ 6.

8. The SOW "define[d] the implementation project for the Microsoft Dynamics 365 based next generation driver recruiting system," including the Portal, and provided "an estimated cost, timeline, assumptions, and responsibilities for the delivery of the driver recruiting system." SOW, Ex. 3, § 1.2.

9. Pursuant to the MSA, TTEC represented and warrantied "that the Services and Deliverables will operate as described in the [SOW] and will be free of material defects . . . for a period of sixty (60) days following the date such Services and Deliverables are accepted by" Hunt. MSA, Ex. 2, § 4.1.

10. The Portal went live in 2020. Am. Compl., ECF 12, ¶ 13; Hu Declaration, Ex. 1, at ¶ 8.

11. TTEC continued to test, troubleshoot, and fine-tune the Portal through February 2021. *See* Hu Declaration, Ex. 1, at ¶ 8.

12. As of February 2021, TTEC's work was done, and Hunt discontinued the relationship with TTEC. *See id*.

13. For the warranty to be triggered, Hunt was required to report any such alleged material defects within sixty (60) days following the acceptance date. Hunt. MSA, Ex. 2, § 4.1. Hunt did not make such a timely report and, as a result, it makes no breach of warranty claim in this action. *See* Hu Declaration, Ex. 1, at ¶ 8.

14. On July 2, 2021, a third-party cybersecurity firm – named UpGuard – notified Hunt of a configuration error in the Portal that potentially left exposed the Personal Identifiable Information ("PII") of job applicants to hackers (the "Security Vulnerability"). Am. Compl., ECF 12, ¶ 13.

15. Hunt explained to this Court:

> In the UpGuard Report, UpGuard detailed its research on vulnerability associated with Microsoft Power Apps and provided targeted observations for several entities, including American Airlines, Ford, J.B. Hunt, and various governmental entities that used the Microsoft Power Apps. *See* McTigue Decl, Ex. A at pp. 5-10. Specifically, J.B. Hunt learned that when configured using default settings, the Microsoft Power Apps portal might enable public access to certain data. *See* SCC ¶¶ 5, 38, 46, Ex. 1.

*Wilson v. Hunt*, Case No. 5:21-cv-05194, ECF 45 (W.D. Ark. Mar. 31, 2022), Ex. 4, at p. 8.

16. Within five days, by July 7, 2021, Hunt responded and secured the Portal on its own, without asking anything of TTEC. *See Wilson v. Hunt*, Case No. 5:21-cv-05194, ECF 45 (W.D. Ark. Mar. 31, 2022), Ex. 4, at p. 9.

17. Hunt wrote to affected applicants that it "immediately took steps to secure the portal" and "reviewed permissions to access data in the cloud, made modifications for all cloud services, and implemented other measures to help prevent unauthorized access to our data." *Wilson v. Hunt*, Case No. 5:21-cv-05194, ECF 32-1 (W.D. Ark. Mar. 1, 2022), Ex. 5.

18. Hunt told this Court in the *Wilson* litigation that it used security procedures routinely used to manage critical business systems to fix the configuration issue and to secure the Portal against potential hackers and Hunt described the vulnerability as not being "readily detectable":

> Upon receipt of UpGuard's notification and consistent with security procedures routinely used to manage critical business systems, J.B. Hunt promptly changed the configuration, secured the Portal, and took additional steps to prevent similar vulnerabilities in the future. *Id*. ¶ 38, Ex. 1. UpGuard has since independently

3

> confirmed that J.B. Hunt "secured" the Microsoft Power Apps portal on its Portal by July 7, 2021. *See* McTigue Decl., Ex. A at p. 6.
>
> On August 23, 2021, and while J.B. Hunt was still in the process of investigating the incident, UpGuard publicly disclosed the Microsoft Power Apps vulnerability and the Security Vulnerability for the first time by way of the UpGuard Report. SCC ¶ 43. UpGuard expressed the view that the potential vulnerability in the Microsoft Powers App that led to the Security Vulnerability was neither "adequately publicized," "adequately appreciated," nor readily detectable prior to its reporting. McTigue Decl., Ex. 1 at p. 2. Indeed, according to UpGuard, "multiple governmental bodies reported performing security reviews of their apps without identifying this issue." *Id*.

*Wilson v. Hunt*, Case No. 5:21-cv-05194, ECF 45 (W.D. Ark. Mar. 31, 2022), Ex. 4, at pp. 8-9.

      19.    Hunt told this Court that it was Microsoft that made changes that fixed the Security Vulnerability going forward:

> UpGuard also stated that "Microsoft has since made changes to Power Apps portals such that table permissions are enabled by default, thereby eliminating the vulnerability for Microsoft Power Apps users going forward. *Id*.

*Wilson v. Hunt*, Case No. 5:21-cv-05194, ECF 45 (W.D. Ark. Mar. 31, 2022), Ex. 4, at p. 9.

      20.    Hunt confirmed to this Court that none of its applicants' or employees' PII had been accessed wrongfully or otherwise hacked:

> J.B. Hunt completed its investigation into the Security Vulnerability by October 18, 2021. SCC ¶ 38, Ex. 1 at 1. Through this investigation, it determined that while certain applicant and employee information "could have been" accessible between August 17, 2020 and July 2, 2021, *see id.* at 1 (disclosing extent of Security Vulnerability), it found no evidence that any unknown third party had accessed its systems or that any data was otherwise compromised. . . .
>
> At no point did J.B. Hunt indicate (and there is no evidence) that any unknown third party *had accessed* any job applicant's PII. . . .

*Wilson v. Hunt*, Case No. 5:21-cv-05194, ECF 45 (W.D. Ark. Mar. 31, 2022), Ex. 4, at pp. 9-10 (emphasis in original).

4

21. Indeed, in written discovery in this case, Hunt admitted that "it is unaware of any person's personally identifiable information being accessed or compromised by any unknown third party." RFA No. 6, Ex. 8.

22. Hunt wrote to this Court that the Security Vulnerability was not something unique to TTEC's specific work for Hunt but was a wide-ranging issue involving many Microsoft customers. *See Wilson v. Hunt*, Case No. 5:21-cv-05194, ECF 57 (W.D. Ark. June 24, 2022), Ex. 6, at p. 2. Specifically, Hunt explained to this Court: "On July 2, 2021, [UpGuard] notified [Hunt] of a security vulnerability that existed on the third-party application – 'Microsoft Power Apps' – that J.B. Hunt and numerous other businesses and government entities used." *Id*.

23. Even though no person's PII was accessed wrongfully, Hunt was sued in four lawsuits, with plaintiffs generally alleging that their PII may have been exposed due to the Security Vulnerability with the Portal. In written discovery, Hunt identified the four lawsuits:

- *Wilson v. Hunt* (the case discussed above), No. 5:21-CV-05194 (W.D. Ark.);
- *Brown v. Hunt*, No. 4:21-CV-04081 (W.D. Ark.);
- *Baker v. Hunt*, Circuit Court of Cook County, Illinois; and
- *Ames v. Hunt*, Judicial Circuit Court of St. Louis County, Missouri.

24. The *Wilson*, *Brown*, and *Baker* lawsuits were consolidated under the *Wilson* caption in this Court and before this judge, the Honorable Timothy L. Brooks. Hunt moved to dismiss pursuant to Fed. R. Civ. P. 12(b) pre-answer and pre-discovery and this Court granted the motion, dismissing the cases for lack of standing and/or lack of damages because no PII was wrongfully accessed. *See generally Wilson v. Hunt*, Case No. 5:21-cv-05194, ECF 63 (W.D. Ark. Oct. 6, 2022), Ex. 7. Hunt did not have to go through discovery in these cases because of the pre-answer dismissal.

25. As for the fourth lawsuit, the *Ames* case in Missouri, Hunt also moved to dismiss. Before that motion was decided, Hunt settled that case for a confidential amount. The settlement amount was identified in discovery pursuant to the protective order.

/s/ Brandon B. Cate
Vincent O. Chadick
Ark. Bar No. 94075
Brandon B. Cate
Ark. Bar No. 2001203
Meredith M. Causey
Ark. Bar No. 2012265
Andrew S. Dixon
Ark. Bar No. 2019193
Attorneys for Defendants
QUATTLEBAUM, GROOMS & TULL PLLC
4100 Corporate Center Drive, Suite 310
Springdale, Arkansas 72762
Telephone: (479) 444-5200
Facsimile: (479) 444-6647
E-Mail: vchadick@qgtlaw.com
E-Mail: bcate@qgtlaw.com
E-Mail: mcausey@qgtlaw.com
E-Mail: adixon@qgtlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 19th day of April, 2024, I filed a copy of the foregoing with the Clerk of the Court using the ECF electronic filing system, which shall send notification of such filing to the following counsel of record for plaintiff:

**Jason H. Wales, Esq.**
at jason@wm-lawyers.com; tracy@wm-lawyers.com

/s/ Brandon B. Cate