IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

J.B. HUNT TRANSPORT, INC.     PLAINTIFF

vs.     Case No. 5:23-cv-05094-TLB

TTEC DIGITAL, LLC and TTEC HOLDINGS, INC.     DEFENDANTS

### DEFENDANTS' BRIEF IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT AND TO MOTION FOR PARTIAL SUMMARY JUDGMENT

TTEC Digital, LLC, which is the successor in interest to former defendant Avtex Solutions, LLC, and TTEC Holdings, Inc. (collectively, "TTEC"), is supporting brief in opposition to plaintiff J.B. Hunt Transport, Inc.'s motion for summary judgment or, alternatively, for partial summary judgment (ECF 34), states:

**I.   Introduction**

If the complaint against TTEC survives dismissal as a matter of law, then summary judgment and partial summary judgment to J.B. Hunt Transport, Inc. ("Hunt") must be denied because there exist genuine, material disputes of fact "such that a reasonable jury could return a verdict for" TTEC on Hunt's claim. *Allison v. Flexway Trucking, Inc.*, 28 F.3d 64, 66 (8th Cir. 1994) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

TTEC contends respectfully that summary judgment in favor of TTEC on Hunt's claim is appropriate. ECF 28-30. However, if summary judgment dismissing Hunt's case is not entered, then Hunt's motion, ECF 34 ("Hunt's Motion"), must be denied because the finder of fact will have to resolve, *inter alia*, whether TTEC and Hunt performed pursuant to the contract between them and specifically if TTEC breached the contract (and, if so, what if any damages to Hunt were caused).

Accordingly, Hunt's Motion should be denied in its entirety.

**II.     Analysis**

Hunt's Motion is simple. Hunt contends summary judgment in the amount of $1,607,639.70 (plus pre-judgment interest, costs, and attorney fees) in its favor is appropriate or, alternatively, that judgment as a matter of law on the issue of liability for breach of contract is proper. ECF 35, at 4. Neither argument is compelling.

*First*, Hunt is unable to prove—and has not proven as a matter of law—that TTEC has breached any provision of the Master Service Agreement ("MSA") or Statement of Work ("SOW") entered by TTEC and Hunt. *See e.g.*, ECF 29, ¶¶3-4; *also see* ECF 30, 9-17. *Second*, Hunt cannot prove that the $1,607,639.70 spent in attorney fees is a loss recoverable pursuant to Arkansas's tacit agreement rule or constitutes monies Hunt was "compelled to pay" that TTEC "ought to" have paid. *See generally* 1 Arkansas Law of Damages § 4:3, and § 17:10. Accordingly, Hunt cannot prove—particularly as a matter of law—its entitlement to judgment either to $1,607,639.70 or to "liability for breach of contract".

**A.  Alleged Breach of Contract**

In its First Amended Complaint (ECF 12), Hunt alleges TTEC breached the parties' contract in two ways: in performing work pursuant to the MSA ("alleged performance breach") and with respect to the indemnification provision ("alleged indemnification breach").

With regard to the alleged performance breach, Hunt claims that TTEC's "implementing the portal for [Hunt] in such a manner so that applicants' PII was not secure or protected from unauthorized access constitute a breach of the parties' contract." ECF 12, ¶18. In its Statement of Material Facts, Hunt intimates that TTEC—exclusively—was responsible for implementing the Microsoft Power Apps portal piece of the driver recruiting system and was responsible for detecting issues with the Microsoft Power Apps portal, suggestions denied by TTEC. *See e.g.*,

ECF 36, ¶¶1,2,5,9-11, 18, 26-29; *see also* ECF 45 and ECF 28-1. In fact, the evidence, including TTEC's expert opinion, is that TTEC was <u>not</u> exclusively responsible for implementation of the portal but, instead, Hunt (as system administrator) and Microsoft were involved in the portal's implementation. Ex. A (Myers at ¶¶131-2, 136-7). Furthermore, the issue with the portal was related to the Microsoft-created program and not with TTEC's performance, and was not detectible by TTEC considering the contractual scope of services to be performed by TTEC for Hunt. *See e.g.*, 28-1, ¶9.[1]

Hunt simply fails to, and cannot, establish as a matter of law that TTEC breached the parties' contract in performing work pursuant to the MSA.

With regard to the alleged indemnification breach, Hunt claims that TTEC's "refusal to indemnify [Hunt] and reimburse it for all the costs and expenses it incurred as a result of [TTEC]'s acts and omissions…also constitutes a breach of the parties' contract." ECF 12, ¶19. This claim, too, is without merit and cannot be established as a matter of law.

As explained in TTEC's summary judgment briefing, the indemnification provision in the parties' contract does not impose an obligation on TTEC to indemnify Hunt for Hunt's own conduct. *See generally* ECF 30, pp. 13-18. While Hunt claims that there "is no question but that all 4 lawsuits filed against [Hunt] stemmed directly and entirely from the Portal," ECF 38, p. 7, the undisputed fact is that the lawsuits filed against Hunt alleged Hunt's own wrongdoing—for negligence, breach of implied contract, invasion of privacy, breach of confidence, violation of state

---

[1] Not addressed in Hunt's Motion, but as explained in TTEC's summary judgment briefing, is that Hunt's alleged performance breach claim fails also because there is no merit to the assertion that TTEC did not "mitigate the risk of storing sensitive candidate information." ECF 30, p. 10. There are "no facts showing a data breach, and there are no facts showing access by an unknown third party." ECF 28-7, p. 14 (Memorandum Opinion and Order in *Wilson et al. v. J.B. Hunt Transport, Inc.*, Case No. 5:21-CV-5194). Without an actual data breach, there is no merit to Hunt's alleged performance breach claim.

stature and unjust enrichment—and did not allege wrongdoing of TTEC. *See e.g.,* ECF 30, pp. 16-17. In other words, Hunt was sued based upon Hunt's own conduct, and the costs it incurred in defending those suits—at least most of the $1,607,639.70 Hunt claims to have paid to lawyers—arose from Hunt's own conduct. And because the MSA's indemnification provision does not include an express intent that Hunt could be indemnified for its own conduct, Hunt cannot prove the alleged indemnification breach claim against TTEC; to the contrary, TTEC is entitled to summary judgment on this claim for this reason alone. *See, e.g.*, *Arkansas Kraft Corp. v. Bayed Sanders Constr.*, 298 Ark. 36, 39, 764 S.W.2d 452, 453 (1989) ("While no particular words are required, the liability of an indemnitor for the negligence of an indemnitee is an extraordinary obligation to assume, and we will not impose it unless the purpose to do so is spelled out in unmistakable terms.").

### B. Alleged Money Judgment

Hunt claims unpersuasively that it is entitled to judgment as a matter of law in the amount of $1,607,639.70 (plus pre-judgment interest, costs, and attorney fees). ECF 35, p. 4. Hunt's claim fails for multiple reasons. *First*, as explained *supra*, Hunt cannot establish any breach of the parties' contract by TTEC. *Second*, Arkansas's tacit agreement rule prohibits Hunt's claim for this $1,607,639.70 for TTEC's alleged breach of performance. *See generally* ECF 30, pp. 11-12. *Last*, even if Hunt were entitled to indemnification under the parties' contract—and it is not—Hunt has not and cannot prove that the $1,607,639.70 were monies Hunt was "compelled to pay" that TTEC "should have paid". *See generally* 1 Arkansas Law of Damages § 17:10.

In short, without prevailing on its allegation that TTEC breached the parties' contract, Hunt cannot recover damages. *See e.g.*, Ark. Model Jury Instr., Civil AMI 2442 (explaining that only if there is a finding in favor of plaintiff on liability for breach can damages be awarded). Hunt cannot

prove TTEC breached the parties' contract, and therefore Hunt is not entitled to a money judgment on the alleged breach of contract claim.

As explained fully in TTEC's summary judgment papers, the tacit agreement rule bars Hunt's damages claim. ECF 30, pp. 11-12. TTEC could not have contemplated, and did not accept responsibility for, legal fees in the amount of $1,607,639.70 to defend 4 lawsuits (at least 3 of which were not colorable) relating to a not-readily-detectible "vulnerability" in Microsoft's Power Apps, when TTEC entered the MSA. It was "not in the contemplation of the parties at the time the contract was made" that TTEC would have to pay over $1 million to Hunt for lawyer fees, especially if there was no data breach. ECF Doc. 36, ¶15; *Interstate Grocer Co. v. Namour*, 201 Ark. 1095, 148 S.W.2d 175, 176 (1941); *also see generally* 1 Arkansas Law of Damages § 4:3. Consequently, Hunt cannot recover any of the $1,607,639.70, even if Hunt could prove the alleged performance breach against TTEC (and it cannot).

Finally, assuming *arguendo* that Hunt could pursue a breach of indemnity claim against TTEC, Hunt could never establish—as a matter of law or otherwise—that Hunt was "compelled to pay" $1,607,639.70 that TTEC "ought to" have paid. *See generally* 1 Arkansas Law of Damages § 17:10 (fn. 12 *citing Larson Mach., Inc. v. Wallace*, 268 Ark. 192, 600 S.W.2d 1 (1980) (explaining doctrine of indemnity as based upon equitable principles of restitution which permit one who is compelled to pay money, which ought to be paid by another, to recover the sums so paid). Despite Hunt's suggestions, the alleged "reasonableness" of the fees Hunt paid to New York lawyers to defend the 4 lawsuits (one of which settled for $3,000 and the other three of which were dismissed on pre-answer motion) is not the issue; instead, the issue (for the finder of fact, if Hunt's action survives summary judgment) is whether Hunt was compelled to pay that much money in lawyer fees to beat these 4 lawsuits. That decision will be based upon a careful review by the

factfinder of all the itemized charges and determining whether each was what Hunt was compelled to pay and what TTEC should have paid. For example, was Hunt "compelled to pay," and should TTEC have instead paid, more than $500.00 for a lawyer to spend 1.1 hours to verify the accuracy of total legal expenses for potential indemnification? Ex. B (ref. JBHunt00917). And this, of course, will be considered in the context of Hunt's having to prove to the finder of fact what will "reasonably and fairly compensate" Hunt for each damage element Hunt claims resulted from the (alleged) breach of contract. *See e.g.*, Ark. Model Jury Instr., Civil AMI 2442. This is a question of fact, and not one for summary judgment.

### III.   Conclusion

Hunt is not entitled to summary judgment or partial summary judgment. Hunt cannot establish as a matter of law it is entitled to judgment in the amount of $1,607,639.70 (plus pre-judgment interest, costs, and attorney fees) or to judgment on the issue of liability for breach of contract. To the contrary, TTEC has demonstrated its entitlement to judgment in TTEC's favor and that dismissal of Hunt's claim against TTEC is proper. ECF 28-30. Accordingly, for the reasons stated herein and in TTEC's papers supporting summary judgment in TTEC's favor, TTEC respectfully requests that Hunt's alternative motions both be denied in their entirety.

/s/ Vincent O. Chadick
Vincent O. Chadick
Ark. Bar No. 94075
Brandon B. Cate
Ark. Bar No. 2001203
Meredith M. Causey
Ark. Bar No. 2012265
Attorneys for Defendants
QUATTLEBAUM, GROOMS & TULL PLLC
4100 Corporate Center Drive, Suite 310
Springdale, Arkansas 72762
Telephone: (479) 444-5200
Facsimile: (479) 444-6647
E-Mail: vchadick@qgtlaw.com
E-Mail: bcate@qgtlaw.com
E-Mail: mcausey@qgtlaw.com

**CERTIFICATE OF SERVICE**

    I hereby certify that on this 7th day of May 2024, I filed a copy of the foregoing with the Clerk of the Court using the ECF electronic filing system, which shall send notification of such filing to the following counsel of record for plaintiff:

**Jason H. Wales, Esq.**
at jason@wm-lawyers.com; tracy@wm-lawyers.com

/s/ Vincent O. Chadick